# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00041-SCT

*LINDE HEALTH CARE STAFFING, INC.*

*v.*

*CLAIBORNE COUNTY HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/2014 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | DANIEL E. RUHL |
| | TIMOTHY JAMES ANZENBERGER |
| | EDWARD BLACKMON, JR. |
| | BARBARA BLACKMON |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TIMOTHY JAMES ANZENBERGER |
| | WILLIAM H. LEECH |
| | SARAH ELIZABETH WILSON |
| | CHRISTOPHER HANSER MEREDITH |
| ATTORNEYS FOR APPELLEE: | EDWARD BLACKMON, JR. |
| | BARBARA BLACKMON |
| | JANESSA EMONTAN BLACKMON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 08/11/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2015-CA-00881-SCT

*LINDE HEALTH CARE STAFFING, INC.*

*v.*

*CLAIBORNE COUNTY HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2015 |
| TRIAL JUDGE: | JOHN HUEY EMFINGER |

COURT FROM WHICH APPEALED:     MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        TIMOTHY JAMES ANZENBERGER
                                WILLIAM H. LEECH
                                SARAH ELIZABETH WILSON
                                CHRISTOPHER HANSER MEREDITH
ATTORNEYS FOR APPELLEE:         EDWARD BLACKMON, JR.
                                BARBARA BLACKMON
                                JANESSA EMONTAN BLACKMON
NATURE OF THE CASE:             CONTRACT
DISPOSITION:                    AFFIRMED - 08/11/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Linde Health Care Staffing, Inc., received a favorable arbitration award in Missouri against the Claiborne County Hospital.  Linde reduced the award to a Missouri judgment, then enrolled the foreign judgment in two Mississippi counties.  The Hospital successfully moved to set aside the foreign judgment in both Mississippi counties, since it never contracted with Linde and, thus, was not bound by the contract's arbitration agreement.

¶2.     On appeal, Linde argues the Hospital's motions to set aside the foreign judgment were filed too late and were time-barred by the Federal Arbitration Act's procedural rules.  We disagree and find the FAA cannot bind an entity that neither agreed to arbitrate nor contracted with the arbitration claimant.  We affirm the two Mississippi judgments setting aside the enrollment of the foreign judgment.

**Background Facts and Procedural History**

2

¶3. This is a consolidated appeal from two orders—one from Claiborne County Circuit Court and one from Madison County Circuit Court. Both orders granted the Hospital's motions to set aside a foreign judgment.

¶4. Linde enrolled a Missouri judgment in both Mississippi counties. The Missouri judgment confirmed an arbitration award in favor of Linde for $182,849.73, plus interest and arbitration costs.[1] But according to the Hospital, the contract containing the arbitration provision was not between Linde and the Hospital. Instead, the contract was between Linde and a private entity—Patient's Choice Medical Center.

## I. First Demand for Arbitration: *Patient's Choice*

¶5. In 2008, the Claiborne County Board of Supervisors leased the county's hospital facility to Patient's Choice for a term of twenty-five years. Patient's Choice was led by its chief executive officer Tim Cockrell. On September 12, 2011, Cockrell contracted with Linde for temporary emergency physicians. The contract Linde submitted to Cockrell listed "Claiborne County Hospital" as the client. But Cockrell—who signed the contract in his capacity as Patient's Choice CEO—handwrote Patient's Choice as the client when signing it. The contract contained an arbitration clause, in which the parties agreed to submit to binding arbitration in Missouri should any dispute arise from the agreement.

¶6. The last invoice Linde sent Cockrell was dated February 19, 2012. According to Linde, it was never paid for any services it provided. On June 12, 2012, Linde sent a demand letter to Cockrell, requesting Cockrell's "company" pay the outstanding $182,849.73 within

---

[1] The Missouri court calculated the accrued interest at $25,654.07 and arbitration costs as $5,050, bringing the total amount of the judgment to $213.553.80.

the week. If not, Linde threatened to "file a complaint in arbitration against you pursuant to your contract."

¶7. Six weeks later, the Claiborne County Board of Supervisors terminated the lease with Patient's Choice. The Board retook possession of the hospital by court order on July 26, 2012—more than five months *after* Linde last provided temporary physicians to Patient's Choice.

## II. Second Demand for Arbitration: *Claiborne County*

¶8. On October 4, 2012, Linde sent a second demand letter. But this time, instead of sending the letter to Patient's Choice's CEO Cockrell at the address listed in the contract, Linde mailed its demand to the Claiborne County Administrator, James Johnson, at his official address. As Linde put it, "the Hospital's administration recently changed," so it was sending its demand, along with the unpaid invoices, to Johnson.

¶9. Five months later, on February 4, 2014, Linde served a demand for arbitration on the Claiborne County Hospital. On February 20, 2014, the attorney for the County Board of Supervisors contacted Linde's counsel by mail. In this letter, the Board's attorney directed Linde to Page 7 of the contract. This is the page where Linde had acknowledged Patient's Choice was its client. The Board's attorney advised Linde to send future arbitration-related correspondence to Patient's Choice, not Claiborne County.

¶10. In response, Linde's counsel, relying on Page 1 of the contract, claimed the contract was with Claiborne County Hospital. And "[t]he fact someone handwrote a different name on [the last page] is immaterial." The Board's attorney strongly disagreed in writing,

4

pointing out this notation was proof Linde's client was Patient's Choice. And the fact the contract was executed by Patient's Choice's CEO Cockrell was material, since Cockrell obviously had no authority to bind the County Board of Supervisors.[2] This was the last correspondence in the record between Linde and Claiborne County.

### III. Arbitration Award

¶11. On May 31, 2013, Linde appeared through counsel at a telephonic arbitration hearing in Missouri. According to the arbitrator, "Respondent Claiborne County Hospital . . . failed to appear after due notice by mail . . . ." The arbitrator found the Hospital owed Linde $182,849.73, plus interest and costs. And on June 18, 2013, the arbitrator ordered the "Respondent" to pay Linde that amount.

### IV. Enrollment of the Foreign Judgment

¶12. On January 2, 2014, Linde obtained a judgment confirming the arbitration award from the Circuit Court of St. Louis County, Missouri.

#### A. Claiborne County

¶13. Linde enrolled this foreign judgment in the Claiborne County Circuit Court on March 21, 2014. On May 22, 2014, the Claiborne County Hospital moved to set aside the foreign

---

[2] The Board's attorney informed Linde's counsel:

In the State of Mississippi, the only way a public entity speaks, is through its minutes. The Board of Supervisors of Claiborne County did not authorize a contract with Linde Health Care Staffing, Inc. I would presume the Director of Linde Health Care Staffing, Inc., knew who had the authority to execute the contract. Claiborne County leased its hospital to Patient's Choice on October 1, 2008. You can obtain a copy of this Lease Agreement through the Public Records Request.

5

judgment. The Hospital attached to its motion a copy of the lease between Claiborne County and Patient's Choice. It also attached the correspondence between Linde's counsel and the Board's attorney.

¶14. The circuit court heard the Hospital's motion to set aside on September 2, 2014. The Hospital argued the arbitration award was based on a contract to which Claiborne County Hospital was never party. The Hospital also asserted Linde knew the contract was with Patient's Choice, not the County. Yet Linde still chose to materially misrepresent to the arbitrator that its client had been the Claiborne County Hospital, not even mentioning Patient's Choice. For these reasons, the Hospital argued the arbitration-based foreign judgment was void and should be set aside.

¶15. In response, Linde claimed too much time had passed for the Hospital to challenge the arbitration award. Citing the Federal Arbitration Act (FAA), Linde insisted that once the Hospital had notice of the award, it had only ninety days to vacate it. So as Linde pitched it, the Hospital could not circumvent the FAA by waiting to challenge the underlying arbitration award until after Linde obtained the Missouri judgment, then enrolled it in Mississippi.

¶16. The Claiborne County Circuit Court disagreed. It found the Missouri judgment was not entitled to full faith and credit because the judgment was obtained by misrepresentation, fraud, or other undue means. It also found the Missouri court lacked jurisdiction over the Hospital, which never entered a contract with Linde nor availed itself of Missouri's

jurisdiction. The court entered an order setting aside the foreign judgment on December 2, 2014. Linde timely appealed.

### B. Madison County

¶17. Before the Claiborne County enrollment was set aside, Linde also enrolled its foreign judgment in Madison County. The Hospital similarly moved to set aside the foreign judgment, which the Madison County circuit judge granted on May 11, 2015. Like the Claiborne County court, the Madison County Circuit Court found Linde's contract was with Patient's Choice. Because the Hospital was not a party, the Missouri court lacked jurisdiction over it. Linde timely appealed this order too. And we consolidated the two appeals.

## Discussion

### I. The Hospital's Rule 60(b) motion was not time-barred.

¶18. This Court has deemed Mississippi Rule of Civil Procedure 60(b) an appropriate avenue to challenge enrollment of foreign judgments not entitled to full faith and credit. *E.g., Reeves Royalty Co. v. ANB Pump Truck Serv.*, 513 So. 2d 595 (Miss. 1987) (affirming the trial court's grant of a Rule 60(b) motion to set aside a foreign judgment). But Linde argues the Hospital's use of Rule 60(b) was improper here. Because the foreign judgment was based on an arbitration award, Linde suggests the FAA—and not our own civil procedure rules—controls.

¶19. Under the FAA, motions to vacate arbitration awards must be filed in the federal court where the award was made within ninety days of notice of the arbitration award. 9 U.S.C.

7

§§ 10, 12 (2012). And Linde suggests that, because the Hospital did not move to vacate within ninety days of notice,[3] the Hospital's Rule 60(b) motion to set aside the foreign judgment is time-barred.

¶20.  Linde's time-bar argument is based entirely on its belief the FAA controls. But the looming question Linde fails to answer is—How can the Hospital be bound by the FAA's procedural rules if it never entered a contract with an arbitration clause? The simple answer is it cannot.

¶21.  In asking us to choose the FAA's time limit over our own procedural rules, Linde appeals to the policy favoring arbitration and the goal of finally resolving disputes as early as possible. But the United States Supreme Court has emphasized that this policy is based on certain principles. And the first notion is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L. Ed. 2d 1409 (1960)). Moreover, whether the parties agreed to arbitrate is a question for the court, not the arbitrator. *AT&T Techs., Inc*, 475 U.S. at 648-49; *see also* *Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) (holding that the fact an arbitration award had already been entered and not vacated within ninety days did not preclude the court from determining "'arbitrability' in the first instance").

---

[3] It is not clear from the record when the Hospital was notified about the arbitration award. But the Hospital does not contend it lacked notice.

8

¶22.    Here, the Hospital never agreed to submit any grievance with Linde to arbitration because it never entered into *any agreement* with Linde.[4]  During the contractual time period, Claiborne County had leased its hospital facility to Patient's Choice.  And as the contract clearly shows, it was Cockrell, in his capacity as CEO of the private entity Patient's Choice, who entered the contract with Linde.  Because the Hospital was not a party to the contract, it was neither obligated to participate in the arbitration nor bound by the FAA's procedural rules.  *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427,

---

[4] We find this to be the key distinction between this case and the cases Linde cites. Linde contends "most jurisdictions" have held that challenges to the validity of an arbitration award—"including where a party claims that they were not a signatory to the underlying contract or arbitration clause"—are waived if not brought in a timely motion to vacate.  But after reading Linde's cases, we discovered none of them support the position it takes here—that a party claiming *no contractual relationship whatsoever* with the arbitration claimant is time-barred from arguing it is not bound by the arbitration award.  Instead, in all the cases Linde cites, the party lodging the untimely attack against the arbitration award unquestionably was in a contractual relationship with the party who obtained the award. *See, e.g.*, *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 428 (7th Cir. 1998) (imposing ninety-day time limit to challenge a federal labor arbitration award on a business owner who undisputedly entered a collective bargaining agreement (CBA) with an arbitration clause); *Sullivan v. Gilchrist*, 87 F.3d 867 (7th Cir. 1996) (involving successor plumbing business that continued to deal with the union under its predecessor's CBA); *Taylor v. Nelson*, 788 F.2d 220 (4th Cir. 1986) (also involving court-ordered arbitration); *MCI Telecomms., Corp. v. Happy the Glass Man, Inc.*, 974 F. Supp. 1016, 1021-22 (E.D. Ky. 1997) (finding "it [was] clear that Happy entered into an agreement which provided for arbitration"); *Real Color Displays, Inc. v. Universal Applied Techs. Corp*., 950 F. Supp. 714, 719 (E.D.N.C. 1997) (finding a vendee had accepted the sales agreement, which contained an arbitration clause, when it accepted vendor's goods and sent back an invoice); *Portfolio Recovery Assocs., LLC v. Freeman*, 717 S.E.2d 43 (N.C. Ct. App. 2011) (involving a credit-card holder who admittedly had entered an agreement to arbitrate and actually participated in arbitration); *Advantage Assets, Inc. II v. Howell*, 663 S.E.2d 8 (N.C. Ct. App. 2008) (involving a credit-card holder who did not claim he never entered into a contract with the creditor, just that he did not sign the latest version of the credit agreement); *James Valley Grain, LLC v. David*, 802 N.W.2d 158 (N.D. 2011) (imposing ninety-day time limit after *court-ordered* arbitration).

428, 433 (7th Cir. 1998) (holding—after the ninety-day time limit had passed—that a union could not enforce an arbitration award against a related company because that company "was not a party to the [agreement] in any sense of the word"); ***Carpenters 46 N. Cal. Counties Conference Bd. v. Zcon Builders***, 96 F.3d 410 (9th Cir. 1996) (finding "failure to move to vacate the arbitrator's decision d[id] not bar" a challenge in subsequent enforcement proceedings based on the argument the entity against whom the arbitration award was entered was not the entity that entered the arbitration agreement); ***Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Triad Constr. Servs., Inc.***, No. 97 C 6218, 1999 WL 759516, at *3 (N.D. Ill. Sept. 1, 1999) (unreported) (holding a company, which had waited until the enforcement proceeding to argue it was not a party to the arbitration agreement, could not "be bound by arbitrations it never agreed to submit to, under a contract it never signed"). Instead, the Hospital was not barred from waiting to challenge the arbitrator's and Missouri court's lack of jurisdiction when Linde attempted to enforce the Missouri judgment in Mississippi.

## II.    The Hospital supported its motion with affirmative proof.

### A.    The Contract and Lease

¶23.    Alternatively, Linde argues the Hospital failed in its burden to demonstrate the arbitrator and the Missouri court lacked personal jurisdiction over the Hospital.

¶24.    Under the United States Constitution, Mississippi courts "must give full faith and credit to the final judgments of all other states" when "the court of state had lawful authority to enter the judgment." ***Reeves Royalty***, 513 So. 2d at 598 (citing U.S. Const. art. 4, § 1).

But when "the court rendering the judgment was without jurisdiction or [the] judgment was obtained by extrinsic fraud," a Mississippi court "is not required to recognize the judgment of a court of another state[.]" *Id.* (quoting *Britton v. Gannon*, 285 P.2d 407, 409 (Okla. 1955)). Here, neither the Claiborne County Circuit Court nor Madison County Circuit Court recognized the Missouri judgment. Rather, both Mississippi courts found Missouri lacked personal jurisdiction because the Hospital never agreed to arbitrate in Missouri.[5] *See Frances Hosiery Mills, Inc. v. Burlington Indus., Inc.*, 204 S.E.2d 834, 842-43 (N.C. 1974) (finding New York judgment, confirming an arbitration award rendered in New York, was not entitled to full faith and credit in North Carolina because the North Carolina company against which the judgment was entered never agreed to arbitrate in New York, never appeared before the New York arbitrator or New York court, and never conducted business in New York).

¶25. Linde challenges this finding, claiming the Hospital failed to sufficiently show Linde's foreign judgment was invalid. Linde is correct that we are to presume "a judgment rendered by a court of competent jurisdiction in a sister state is . . . valid[] as to that court's assumption of jurisdiction." *Galbraith & Dickens Aviation Ins. Agency v. Gulf Coast Aircraft Sales, Inc.*, 396 So. 2d 19, 21 (Miss. 1981). So "the burden is on the party attacking the judgment to affirmatively show its invalidity."[6] *Id.*

---

[5] The Claiborne County Circuit Court also refused to give full faith and credit based on extrinsic fraud.

[6] Linde relies on authority from other jurisdictions to advocate that the Hospital must show by "clear and convincing" evidence that the foreign judgment should not be accorded full faith and credit. *See, e.g.*, *Winston v. Millaud*, 930 So. 2d 144, 153 (La. Ct. App.

11

¶26. But our review shows the Hospital met this burden. "[E]xtrinsic evidence is admissible in a collateral attack upon a foreign judgment to show that it is void[.]" *Galbraith & Dickens Aviation*, 396 So. 2d at 21. And the contract and lease affirmatively show the Hospital was not the entity that contracted with Linde. Indeed, the lease establishes that during the contract period, the Claiborne County Board of Supervisors had leased the hospital facility to Patient's Choice and had ceased operating it.

¶27. Linde counters that the lease was never properly admitted or authenticated and is hearsay. But as a public document under seal, duly recorded in the Board minutes and registered in the chancery court, the lease is both self-authenticated under Rule 902(1) and nonexcluded hearsay under Rule 803(8). M.R.E. 902(1); M.R.E. 803(8). Further, the Hospital submitted the lease to both circuit courts in its Rule 60(b) motions to set aside. And Linde never moved to strike the lease.

### B.    Claimed Ambiguity

¶28. Linde also claims the contract is ambiguous as to its client—the Hospital or Patient's Choice. What Linde appears to be arguing is that, if the contract is ambiguous, then the Hospital cannot meet its burden to affirmatively show it was not the contracting party. But we fail to follow this logic. When a contract is ambiguous, we employ canons of construction—which include looking to extrinsic evidence, if necessary. *See, e.g.*, *Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1232-33 (Miss. 2009). And here, the extrinsic

---

2006); *Ward v. Hawkins*, 418 S.W.3d 815, 822 (Tex. Ct. App. 2013). But even if we were to follow those jurisdictions who impose a clear-and-convincing standard, our conclusion would be the same—the Hospital met its burden to affirmatively show the invalidity of the arbitration award and resulting judgment.

evidence—namely the lease—supports the interpretation that the contract was with Patient's Choice, not the Hospital. So Linde's ambiguity argument actually strengthens the Hospital's position.

¶29. But having reviewed all of Linde's assertions, the fact remains the contract coupled with the lease affirmatively show it was Patient's Choice, not the Hospital, that entered the contract containing the arbitration award. We thus affirm both trial courts' orders setting aside the Missouri judgment for lack of personal jurisdiction.

**Conclusion**

¶30. While courts favor arbitration as a matter of policy, at times this policy "run[s] up against the more fundamental underlying policy that parties . . . should be held to their contractual commitments to arbitrate, but not forced to submit to contracts to which they are not parties[.]" *Rabine*, 161 F.3d at 432. This is indeed one of those times. Linde cannot invoke the FAA to argue the Hospital is time-barred when the Hospital has affirmatively shown it was not the party that contracted with Linde. That is why the Hospital could not be forced to arbitrate or be bound to an arbitration award. *See Ariz. Mech.*, 863 F.2d at 651. Nor did the Missouri court obtain jurisdiction over the Hospital when it confirmed the arbitration award. *See Frances Hosiery Mills*, 204 S.E.2d at 841-43. For these reasons, we affirm the circuit courts' orders setting aside the Missouri judgment, which Linde enrolled in both Claiborne and Madison Counties.

¶31. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR.**